**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

THE ESTATE OF H. FRED CLARK    : CIVIL ACTION
by Karen Clark and Alan F.       :
Markowitz, Esq., co-executors : 
                            :
         vs.              : NO. 12-CV-6259
                            :
THE TORONTO DOMINION BANK,     :
a/k/a TD BANK FINANCIAL GROUP :
<u>Et</u>. <u>Al</u>.                           :


**<u>MEMORANDUM AND ORDER</u>**


**JOYNER, C.J.**                               **March    20, 2013**


      The Court is here presented with yet another Motion seeking

dismissal of the Plaintiff's First Amended Complaint - now on

behalf of TD Bank, N.A. For the reasons which follow, this

motion, too, shall be granted in part and denied in part[1].

### **<u>History of the Case</u>**

      This case arises out of a series of unauthorized withdrawals

from a bank account which the late Dr. H. Fred Clark had at TD

Bank. These withdrawals were allegedly used to pay outstanding

balances owed by numerous unidentified customers of the various

---

[1] Nearly all of the defendants in this action have filed motions seeking to dismiss the claims against them. Specifically, Rule 12(b)(6) motions have been filed by and previously adjudicated as to Defendants AT & T, Sprint Nextel Corporation, Sprint Spectrum, L.P. and Nextel Communications of the Mid-Atlantic, Inc. ("the Sprint Defendants"), Dish Network Corporation, PECO Energy Company, Wilbur Ross & Co., JP Morgan Chase & Co., T-Mobile USA, Inc. and Capital One Financial Corporation. The First Amended Complaint refers to these various defendants collectively as the "Retail Defendants." (First Amended Complaint, ¶23).

retail defendants.  These withdrawals are further alleged to have commenced in November 2008 when, according to the First Amended Complaint (hereafter described as the "FAC"), one or more of the John and Jane Doe Defendants 1-20, improperly obtained access to Dr. Clark's account and began initiating the withdrawals through a series of Electronic Funds Transfers ("EFTs") and/or Remotely Created Checks ("RCCs").  As a result, the Retail Defendants were paid some $490,000 for bills and other charges not incurred by Dr. Clark.  All told, more than $638,000 was purportedly stolen from Dr. Clark's account between November 2008 and May 2010, when the improper transfers ceased.   (FAC, ¶s 34, 36, 37).

Dr. Clark initially commenced this suit on October 29, 2010 by filing a Praecipe for a Writ of Summons in the Court of Common Pleas of Philadelphia County.  Dr. Clark died in April 2012 and following the substitution of his Estate as the Plaintiff, a Complaint was filed in the Court of Common Pleas on October 5, 2012.  While several of the defendants filed preliminary objections, Moving Defendant TD Bank removed the action to this Court on November 5, 2012.  Defendants then essentially re-filed their preliminary objections as Rule 12(b)(6) motions in this Court.  In response, Plaintiff filed the First Amended Complaint, thereby effectively mooting the original motions to dismiss, and Defendants thereafter again filed the motions to dismiss which were most recently adjudicated by this Court and the last of

which is the subject of this Memorandum.

## Standards Governing Rule 12(b)(6) Motions to Dismiss

It is well established that in considering motions to dismiss under Fed. R. Civ. P. 12(b)(6), the district courts must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, viewing them in the light most favorable to the plaintiff.  <u>Great Western Mining & Mineral Co. v. Fox, Rothschild, LLP</u>, 615 F.3d 159, 161 n.1 (3d Cir. 2010); <u>Krantz v. Prudential Investments Fund Management</u>, 305 F.3d 140, 142 (3d Cir. 2002); <u>Hamilton v. Allen</u>, 396 F. Supp.2d 545, 548-549 (E.D. Pa. 2005).  In so doing, the courts must consider whether the complaint has alleged enough facts to state a claim to relief that is plausible on its face. <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007).  "It is therefore no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of the proscribed conduct." <u>Umland v. Planco Financial Services, Inc.</u>, 542 F.3d 59, 64 (3d Cir. 2008), quoting <u>Philips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

In assessing plausibility, in addition to the complaint itself, the court can review documents attached to the complaint and matters of public record; a court may also take judicial notice of a prior judicial opinion. McTernan v. City of York, PA, 577 F.3d 521, 526 (3d Cir. 2009); Buck v. Hampton Township School District, 452 F.3d 256, 260 (3d Cir. 2006).

Now when presented with a motion to dismiss, district courts should conduct a three-step analysis. First, the court must "take note of the elements a plaintiff must plead to state a claim." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011)(quoting Iqbal, 129 S. Ct. at 1947) Next, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(citing Iqbal, 129 S. Ct. at 1949). Third, a District Court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. (citing Iqbal, 129 S. Ct. at 1950). In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. Id.

### Discussion

A. Is Count One Barred by Operation of EFTA's Statute of Limitations and Failure to Comply with its Notice Provision?

By this motion, TD Bank first challenges the viability of

Count One of the FAC, alleging violations of the Electronic Funds
Transfer Act, 15 U.S.C. §1601, et. seq. ("EFTA") inasmuch as the
EFTA has a one-year statute of limitations and a 60-day notice
provision.   In response, Plaintiff invokes the doctrine of
equitable tolling.

According to 15 U.S.C. §1693(b), the purpose of the EFTA is
the provision of "a basic framework establishing the rights,
liabilities, and responsibilities of participants in electronic
fund and remittance transfer systems," with the "primary
objective" being "the provision of individual consumer rights."
The statute covers a wide range of electronic money transfers –
from ATM withdrawals and debit-card payments to banking by phone,
and subjects them to a litany of procedural requirements designed
to protect consumers from transactions made in error or without
their consent.  Wike v. Vertrue, Inc., 566 F.3d 590, 592 (6th
Cir. 2009).  This is evinced by the following language in 15
U.S.C. §1693a:

> (7) the term "electronic fund transfer" means any transfer
> of funds, other than a transaction originated by check,
> draft, or similar paper instrument, which is initiated
> through an electronic terminal, telephonic instrument, or
> computer or magnetic tape so as to order, instruct, or
> authorize a financial institution to debit or credit an
> account.  Such term includes, but is not limited to, point
> of sale transfers, automated teller machine transactions,
> direct deposits or withdrawals of funds, and transfers
> initiated by telephone...
>
>          ....
>
> (12) the term "unauthorized electronic fund transfer" means

5

an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit, but the term does not include any electronic fund transfer (A) initiated by a person other than the consumer who was furnished with the card, code, or other means of access to such consumer's account by such consumer, unless the consumer has notified the financial institution involved the transfers by such other person are no longer authorized, (B) initiated with fraudulent intent by the consumer or any person acting in concert with the consumer, or (C) which constitutes an error committed by a financial institution.

Pursuant to 15 U.S.C. §1693g, a consumer is liable for an unauthorized electronic fund transfer involving his or her account:

only if the card or other [means] of access utilized for such transfer was an accepted card or other [means] of access and if the issuer of such card, code, or other means of access has provided a means whereby the user of such card, code or other means of access can be identified as the person authorized to use it, such as by signature, photograph, or fingerprint or by electronic or mechanical confirmation. In no event, however, shall a consumer's liability for an unauthorized transfer exceed the lesser of-

(1) $50; or

(2) the amount of money or value of property or services obtained in such unauthorized electronic fund transfer prior to the time the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has been or may be affected. ...

15 U.S.C. §1693g(a). This Section further provides in relevant part:

Notwithstanding the foregoing, reimbursement need not be made to the consumer for losses the financial institution establishes would not have occurred but for the failure of the consumer to report within sixty days of transmittal of

6

the statement (or in extenuating circumstances such as extended travel or hospitalization, within a reasonable time under the circumstances) any unauthorized electronic fund transfer or account error which appears on the periodic statement provided to the consumer under section 906 [15 U.S.C. §1693d]. ...

And, as Section 916 of the Act, 15 U.S.C. §1693m makes clear, individual consumers may bring a civil action for actual or statutory damages against anyone who fails to comply with any provision of EFTA, provided, however, that the action be brought within one year from the date of the occurrence of the violation. 15 U.S.C. §1693m(g). See also, Golden-Koether v. JP Morgan Chase Bank, N.A., Civ. A. No. 11-3586, 2011 U.S. Dist. LEXIS 136472 at *4 (D.N.J. Nov. 29, 2011)("EFTA provides a private cause of action for a consumer to seek damages for financial institutions' unauthorized electronic transfer of funds from the consumer's account." (citing Raine v. Reed, 14 F.3d 280, 283 (5th Cir. 1994)).

As recited in paragraph 26 of the FAC, commencing in or about November 2008, one or more of the Doe defendants improperly obtained access to Dr. Clark's TD Bank account and, without his authorization, began transferring funds from his account to the various other, Retail Defendants in payment of bills and/or charges which those defendants were owed by a number of their (unidentified) customers. Thus, TD argues, "Plaintiff's claim for violation of the EFTA on the basis of these transfers is therefore untimely and must be dismissed." (Defendant TD Bank

N.A.'s Memorandum of Law Supporting its Motion to Dismiss
Plaintiff's Amended Complaint, p. 5).

We agree that it appears from the face of the complaint that
at least those EFTs made between November 2008 and October 29,
2009 are barred by the 1-year statute of limitations.  In support
of its assertion that Plaintiff's EFTA claims are time-barred,
Moving Defendant has appended copies of Dr. Clark's bank account
statements which it asserts it sent to his address of record for
the period between December 14, 2008 through October 29, 2010.[2]

However, Plaintiff further avers that Dr. Clark was diagnosed
with Parkinson's Disease "in or about 2007," and that his
Parkinson's Disease constituted extraordinary circumstances
within the meaning of 15 U.S.C. §1693g because it impaired Dr.
Clark's memory and cognitive functions leaving him unable to
effectively review the bank statements that were sent to him.
(FAC, ¶s5, 46).  Thus, Plaintiff contends, the EFTA claims which
pre-date October 29, 2009 are not barred by reason of the
extraordinary circumstances exception to the sixty-day notice
requirement and under the federal doctrine known as equitable
tolling.

---

[2]  Plaintiff appears to concede this point in its Omnibus Memorandum of
Law in Opposition to Defendants' Motions to Dismiss the complaint in that it
states at page 6 of this Memorandum:

    Thus, there is nothing in the EFTA statutory language which prevents
    Plaintiff from bringing claims for any of the EFTA violations which
    occurred within one year of the filing of the State Court Action.

The doctrine of equitable tolling "can rescue a claim otherwise barred as untimely by a statute of limitations [only] when a plaintiff has been prevented from filing in a timely manner due to sufficiently inequitable circumstances." Glover v. FDIC, 698 F.3d 139, 151 (3d Cir. 2012)(quoting Santos ex rel. Beato v. United States, 559 F.3d 189, 197 (3d Cir. 2009)). "Equitable tolling is extended only sparingly, in circumstances '(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.'" Id. (citing Id.) Equitable tolling thus differs from a discovery rule, which governs a claim's accrual date for statute of limitations purposes such that a claim does not accrue until such time as a plaintiff "discovers" an injury. See, Santos, 559 F.3d at 199 (citing Hedges v. U.S., 404 F.3d 744, 750-51 (3d Cir. 2005)("...we emphasize that the discovery rule, which governs a claim's accrual date for statute of limitations purposes, is distinct from equitable tolling, which applies where circumstances unfairly prevent a plaintiff from asserting her claim.")).

The question with which we are here presented then, is this: whether the cognitive and memory impairments occasioned by

Plaintiff's Parkinson's Disease were of such severity as to have prevented him from timely asserting his rights under EFTA. Although the case law in this area is scant, it is sufficient to guide our decision.

We note at that outset that while mental illness or deficiency has not been held to toll a statute of limitations in a federal action per se, it may so operate where a plaintiff's mental incompetence motivated to some degree the injury that he seeks to remedy or where the illness in fact prevents the sufferer from managing his affairs and understanding his legal rights and acting upon them.  Lake v. Arnold, 232 F.3d 360, 371 (3d Cir. 2000)(citing Barren by Barren v. United States, 839 F.3d 987 (3d Cir. 1988) and Eubanks v. Clarke, 434 F. Supp. 1022 (E.D. Pa. 1977)); Miller v. Runyon, 77 F.3d 189, 191 (7th Cir. 1996). Thus, the alleged mental incompetence must be "demonstrated and compelling" and must somehow have affected the petitioner's ability to timely file the claim at issue.  Nara v. Frank, 264 F.3d 310, 320 (3d Cir. 2001); Lee v. Overton, Civ. A. No. 10-4283, 2013 U.S. Dist. LEXIS 5734 at *13 - *15 (E.D. Pa. Jan. 15, 2013); Green v. Potter, 687 F. Supp. 2d 502, 518 (D. N.J. 2009). In this regard, psychiatric diagnoses have no significance independent of their effects and effects cannot be assessed in a vacuum.  Graham v. Kyler, Civ. A. No. 01-1997, 2002 U.S. Dist. LEXIS 26639 at *10 (E.D. Pa. Oct. 31, 2002).  This means that a

court must consider all relevant factors in determining whether under all of the circumstances the deficiency had an effect on the ability to file. Id.

Although the issue of whether equitable tolling is available in claims under the EFTA is an unsettled one in the Third Circuit, several courts in other circuits have at least considered the argument in the context of dispositive motions in the cases which came before them. In Peters v. Riggs National Bank, 942 A.2d 1163 (D.C. 2008), Plaintiff was the son and estate executor of a woman whose bank account had been depleted of some $46,000 through the use of unauthorized ATM withdrawals and checks in the 153 day-period between her stroke and death, and another $84,731 in the 41 days immediately following her death. Upon learning of the withdrawals, the Plaintiff sought information regarding them from the bank. In response, the bank provided some documents to Plaintiff several months after his request. Plaintiff, however, erroneously believed that the bank was continuing to investigate and therefore did not file suit until one year and nine months after his mother's death and nearly a year and a half after he had been appointed executor of her estate. In affirming the entry of summary judgment in favor of the bank on Plaintiff's EFTA claim, the D.C. Court of Appeals noted:

> Although the discovery rule could apply to this claim, the
> statute of limitations begins to run from the date of notice

11

of the injury. (citation omitted)... Not only did appellant fail to bring his claim within one year of the final unauthorized transaction ..., he also failed to bring it within a year [of] his appointment as the personal representative of the estate when he began receiving copies of his mother's account statements. Thus, even applying the discovery rule to appellant's claim for unauthorized withdrawals from the ATM's, appellant's claim must fail.

942 A.2d at 1171-1172.

In Apostolidis v. JP Morgan Chase, Civ. A. No. 11-CV-5664, 2012 U.S. Dist. LEXIS 157733 (E.D. N.Y. Nov. 2, 2012), the court dismissed Plaintiff's claim under the EFTA for the reason that it was barred by the statute of limitations. There, Plaintiff sought the return of $147,900 which she alleged was withdrawn from her personal account with Defendant Chase without her permission while she was in Greece. Although she requested that Chase undertake an investigation and provide her with proper documentation of the disputed transfer and of the bank statement showing the withdrawal that Plaintiff claimed she never received, she did not, however, commence her action until more than one year after she learned of the withdrawal. Despite the fact that Plaintiff did not specifically invoke the doctrine, the court nevertheless considered whether equitable tolling was appropriate in her case. In so doing, the court concluded that inasmuch as Plaintiff had adduced no evidence of due diligence or of the necessary extraordinary circumstances justifying an exception, there was no basis to equitably toll the one-year statute. Apostolidis 2012 U.S. Dist. LEXIS at *17-*20.

We agree that it is appropriate to consider whether to toll the EFTA limitations period under the facts as alleged in the instant case.  And, in so considering, we further believe that the condition of Plaintiff's decedent's mind at and around the time during which his bank statements were being sent to him is appropriately evaluated to determine whether the "extraordinary circumstances" element necessary to justify equitably tolling the one-year statute is satisfied here.  However, inasmuch as there is very little actual evidence on this point, we conclude that dismissal at this juncture would be premature.  We therefore shall deny the motion to dismiss on this claim and permit the parties to take discovery into this issue.  In so doing, we remind the defense that it is free to re-raise the arguments on this point by filing a motion for summary judgment at the close of discovery.

> B.  Is Count Two Barred by Plaintiff's Failure to Timely
> Notify TD Bank of the Allegedly Unauthorized Transfers and
> to Timely File His Complaint?

Plaintiff similarly avers in Count Two of the FAC that by making payment on the unauthorized remotely created checks drawn on Dr. Clark's account, TD Bank violated various provisions of the Pennsylvania Uniform Commercial Code ("PCC"), most particularly 13 Pa. C. S. §§ 3401[3], 3403[4], 3407[5], 4401[6] and

---

[3] 13 Pa. C. S. §3401 states:

  **(a) Nonliability in absence of signature**. - A person is not liable on an

13

instrument unless:

> (1) the person signed the instrument; or

> (2) the person is represented by an agent or representative who signed the instrument and the signature is binding on the represented person under section 3402 (relating to signature by representative).

**(b) Form of signature. -** A signature may be made:

> (1) manually or by means of a device or machine; and

> (2) by the use of any name, including a trade or assumed name, or by a word, mark or symbol executed or adopted by a person with present intention to authenticate a writing.

[4] Under 13 Pa. C. S. §3403,

**(a) Ineffectiveness or ratification. -** Unless otherwise provided in this division or Division 4 (relating to bank deposits and collections), an unauthorized signature is ineffective except as the signature of the unauthorized signer in favor of a person who in good faith pays the instrument or takes it for value.  An unauthorized signature may be ratified for all purposes of this division.

**(b) Signature of organization. -** If the signature of more than one person is required to constitute the authorized signature of an organization, the signature of the organization is unauthorized if one of the required signatures is lacking.

**(c) Liability. -** The civil or criminal liability of a person who makes an unauthorized signature is not affected by any provision of this division which makes the unauthorized signature effective for the purposes of this division.

[5] Section 3407, in turn, reads:

**(a) Definition of "alteration". -** "Alteration" means:

> (1) an unauthorized change in an instrument that purports to modify in any respect the obligation of a party; or

> (2) an unauthorized addition of words or numbers or other change to an incomplete instrument relating to the obligation of a party.

**(b) Fraudulent alteration; discharge. -** Except as provided in subsection ©, an alteration fraudulently made discharges a party whose obligation is affected by the alteration unless that party assents or is precluded from asserting the alteration.  No other alteration discharges a party, and the instrument may be enforced according to its original terms.

**© Certain persons not affected by discharge. -** A payor bank or drawee paying a fraudulently altered instrument or a person taking it for value, in good faith and without notice of the alteration, may enforce

4406(e).  These violations, Plaintiff alleges, resulted in
damages in excess of $41,718 plus overdraft, returned check and
late fees along with the attorneys' fees and costs attendant to
initiating this lawsuit.  Defendant TD Bank likewise asserts that
these claims are time-barred by operation of the limitations
period set forth in 13 Pa. C. S. §4406(c),(d) and (f).

Section 4406 of the PCC is addressed to the "[d]uty of
customer[s] to discover and report [an] unauthorized signature or
alteration.  This provision reads:

**(a) Statement of account. -** A bank that sends or makes
available to a customer a statement of account showing
payment of items for the account shall either return or make
available to the customer the items paid or provide
information in the statement of account sufficient to allow

---

rights with respect to the instrument according to its original terms
or, in the case of an incomplete instrument altered by unauthorized
completion, according to its terms as completed.

[6]  Chapter 44 of Title 13 governs the relationship between a payor bank
and its customer.  Section 4401 provides the following in pertinent part:

**(a) General rule. -** A bank may charge against the account of a customer
an item that is properly payable from that account even though the
charge creates an overdraft.  An item is properly payable if it is
authorized by the customer and is in accordance with any agreement
between the customer and the bank.

**(b) Limitation on customer liability. -** A customer is not liable for the
amount of an overdraft if the customer neither signed the item nor
benefited from the proceeds of the item.

....

**(d) Payment to holder on altered or completed item. -** A bank that in
good faith makes payment to a holder may charge the indicated account of
its customer according to:

(1) the original terms of the altered item; or

(2) the terms of the completed item, even though the bank knows
the item has been completed unless the bank has notice that the
completion was improper.

the customer reasonably to identify the items paid.  The statement of account provides sufficient information if the item is described by item number, amount and date of payment.

**(b) Retention of items. -** If the items are not returned to the customer, the person retaining the items shall either retain the items or, if the items are destroyed, maintain the capacity to furnish legible copies of the items until the expiration of seven years after receipt of the items.  A customer may request an item from the bank that paid the item, and that bank must provide in a reasonable time either the item or, if the item has been destroyed or is not otherwise obtainable, a legible copy of the item.

**(c)   Duty of customer. -** If a bank sends or makes available a statement of account or items pursuant to subsection (a), the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized.  If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts.

**(d) Effect of failure to report unauthorized signature or alteration. -** If the bank proves that the customer failed, with respect to an item, to comply with the duties imposed on the customer by subsection (c), the customer is precluded from asserting against the bank:

    (1) the customer's unauthorized signature or any alteration on the item if the bank also proves that it suffered a loss by reason of the failure; and

    (2) the customer's unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank if the payment was made before the bank received notice from the customer of the unauthorized signature or alteration and after the customer had been afforded a reasonable period of time, not exceeding 30 days, in which to examine the item or statement of account and notify the bank.

**(e) Allocation of loss. -** If subsection (d) applies and the customer proves that the bank failed to exercise ordinary care in paying the item and that the failure substantially

contributed to loss, the loss is allocated between the customer precluded and the bank asserting the preclusion according to the extent to which the failure of the customer to comply with subsection (c) and the failure of the bank to exercise ordinary care contributed to the loss. If the customer proves that the bank did not pay the item in good faith, the preclusion under subsection (d) does not apply.

**(f) Statutes of limitations applicable to customer.** - Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer (subsection (a)) discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration. If there is a preclusion under this subsection, the payor bank may not recover for breach of warranty under section 4208 (relating to presentment warranties) with respect to the unauthorized signature or alteration to which the preclusion applies.

"In adopting the Code and its amendments, the Pennsylvania legislature has concluded that customers are better able than banks to minimize the risk of embezzlement" or theft. Environmental Equipment & Service Co. v. Wachovia Bank, 741 F. Supp. 2d 705, 714 (E.D. Pa. 2010). Subsection (f), in turn, is "[k]nown as the 'bank statement defense,' ... because it places the risk of loss squarely on customers after one year has passed." Id, at 715. It thus appears clear from the face of this statute that a number of Plaintiff's claims under the PCC are, in fact, barred given that the remotely created checks were alleged to have been created during the time period from July 14, 2009 through May 13, 2010 and the Praecipe for Writ of Summons was filed on October 29, 2010. (FAC, ¶32). Plaintiff, however, argues that the PCC claims should be tolled for the same reasons

that it advanced for tolling its claims under the EFTA.

Although the Pennsylvania Supreme Court has yet to consider the issue, the vast number of courts which have done so to date, including the Third Circuit and the Pennsylvania Superior Court, have stood with the majority of other jurisdictions in which the UCC was adopted, to hold that the discovery rule does not apply to toll actions commenced under the U.C.C.

In Menichini v. Grant, 995 F.2d 1224 (3d Cir. 1993), the bookkeeper of Plaintiff's company was discovered to have been embezzling the company's funds over a period of nearly two years by forging the plaintiff's signature and then depositing checks made payable to him in her personal account at Defendant Mellon Bank. Plaintiff sued Mellon for conversion under §3-419 of the PCC in response to which Mellon interposed Pennsylvania's two-year statute of limitations. Framing the issue as "whether, in a case involving conversion of negotiable instruments, the 'discovery rule' applies when a party not engaged in fraudulent concealment invokes the statute of limitations," the Third Circuit looked to the fundamental objectives and policies underlying the Uniform Commercial Code. Menichini, 995 F.2d at 1228. In so doing, the Court observed:

> The Code drafters sought quick and inexpensive resolution of commercial disputes. This overarching goal is particularly important with negotiable instruments where the exigencies of commerce require inexpensive, quick, and reliable transfer of funds. When the only legally significant temporal events are the time of injury and the time of

filing, the issue whether the statute of limitations bars an action becomes a relatively simple determination capable of resolution on the basis of judicial pleadings. ... As a final matter, we note that uniform application of legal principles, of course, is a fundamental objective of the Code...

Id, at 1231.  Thus, the Court went on to hold:

For these reasons, we predict that under Pennsylvania law, in the absence of fraud by those invoking the statute of limitations, a cause of action for conversion of negotiable instruments accrues when, irrespective of the plaintiff's ignorance, the defendant wrongfully exercises dominion.  As there is no evidence that Mellon Bank engaged in fraudulent concealment, we will reverse and grant judgment in favor of Mellon Bank on the statute of limitations issue, time-barring relief as to most, if not all, of the 1988 forgeries.

The Third Circuit's ruling in Menichini was one of several decisions upon which the Pennsylvania Superior Court based its rejection of application of the discovery rule to toll the statute of limitations for claims of conversion of negotiable instruments and unauthorized payment of checks in Hollywood v. First National Bank of Palmerton, 2004 PA. Super. 321, 859 A.2d 472 (2004).  Indeed, after surveying the caselaw of "almost every jurisdiction to have considered the issue" and considering that the policies favoring uniformity and facilitating "the rapid flow of commerce by providing certainty and finality in commercial transactions," the Superior Court decreed:

Regardless of the legal theory by which the plaintiff asserts his injury, the countervailing commercial and social interests of negotiability, finality, and uniformity remain constant.  Hence, application of the discovery rule to claims of unauthorized payment of negotiable interests/breach of contract is no less disruptive to the

19

carefully balanced dynamics of the UCC than its application to claims of conversion arising under section 3-420 of the Code. Thus, like claims for conversion, those for unauthorized payment accrue, and the limitation period prescribed by section 4-406 begins to run, when the instrument is negotiated....(citations omitted) The limitations period applies mechanically and, in the absence of evidence of fraudulent concealment by the defendant, claims not brought within one year are time-barred. ..."

Hollywood, 859 A.2d at 482, 483 (citing, inter alia, Pero's Steak & Spaghetti House v. Lee, 90 S.W.3d 614623-624 (Tenn. 2002); John Hancock Financial Servs., Inc. v. Old Kent Bank, 346 F.3d 727, 734 (6th Cir. 2003); Menichini, supra.; Husker News Co. v. Mahaska State Bank, 460 N.W. 2d 476, 477-78 (Iowa 1990)).

Since Menichini and Hollywood were decided, we discern no significant changes in the law in this area, save for some confusion regarding whether §4-406(f) operates as a statute of limitations or a statute of repose.[7] See, e.g., Peters, 942 A.2d at 1167 (finding §4-406(f) constituted statute of repose and holding "[t]herefore, consistent with other jurisdictions and in promotion of the underlying policies of the U.C.C., ... D.C. Code §28:4-406(f) is not subject to equitable tolling."); United States v. Zarra, Civ. A. No. 10-811, 2011 U.S. Dist. LEXIS 93610 at *6 (W.D. Pa. Aug. 22, 2011)("The 'discovery rule' is not

---

[7] "A statute of limitations is a law that bars claims after a specified period. It is generally subject to a discovery rule, meaning that it does not begin to run until the plaintiff is aware (or should be aware) of his claim. A statute of repose is a statute barring suit that is brought after a specified time since the defendant acted. It is generally not subject to a discovery rule." In re Exxon Mobil Corp. Securities Litigation, 500 F.3d 189, 194, n.6 (3d Cir. 2007)(quoting BLACK'S LAW DICTIONARY 1450-1451 (8th ed. 2004)); Environmental Equipment & Service v. Wachovia, supra. at 709, n.2.

applicable to toll the statute of limitations for claims brought under the UCC in Pennsylvania."); Bucci v. Wachovia Bank, N.A., 591 F. Supp. 2d 773, 786 (E.D. Pa. 2008)(same).  Although the FAC alleges that "TD Bank had actual and/or constructive knowledge, and knew or should have known, that one or more of the defendants Does 1-20 were persons employed by TD Bank and/or who had access to TD Bank account information," it does not allege fraudulent concealment on the part of TD Bank.  (FAC, ¶58).  As a result, we find that Plaintiff's PCC claims which emanate from those remotely created checks created before October 29, 2009 are barred by operation of 13 Pa. C. S. § 4406(f).

   C.  Has Plaintiff Sufficiently Pled a Claim for Breach of
   Contract in Count Three of the First Amended Complaint?

   Moving Defendant next seeks dismissal of Count Three of the FAC on the grounds that Plaintiff has failed to state the terms of the alleged contract.

   It is axiomatic that "to state a cause of action for breach of contract under Pennsylvania state law, a plaintiff must allege: (1) the existence of a contract, including its essential terms, (2) a breach of the duty imposed by the contract and (3) resultant damages."  Nordetek Environmental, Inc. v. RDP Technologies, Inc., 862 F. Supp.2d 406, 424 (E.D. Pa. 2012)(quoting Omicron Systems, Inc. v. Weiner, 2004 PA Super. 389, 860 A.2d 554, 564 (Pa. Super. 2004)).  In accord, McShea v. City of Philadelphia, 606 Pa. 88, 97, 995 A.2d 334, 340 (2010)

21

and Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003).

Here, Count Three alleges that at some point prior to November, 2008 the late Dr. Clark opened his TD Bank account at the bank's Walnut Street branch, that pursuant to the agreement between the bank and Dr. Clark, TD "agreed to maintain the security, privacy and confidentiality of Dr. Clark's Account," and that TD "breached the agreement by failing to ensure that only properly authorized persons had access to the Account, specifically, by allowing unauthorized persons including, but not limited to Does 1-20 to access the Account or authorized persons to make unauthorized transfers and withdrawals from the Account." (FAC, ¶s 63-65). In paragraphs 66-73, Plaintiff more particularly asserts the manner of breach and in paragraphs 74-76, claims damages in excess of $614,000. Further, at footnote 1 to paragraph 64, Plaintiff notes that it did not attach a copy of the agreement between the bank and Dr. Clark because it did not have a copy. Inasmuch as all that is required by Fed. R. Civ. P. 8(a) is "a sufficient factual basis to place defendants on notice and allow them to frame a response," we find Count Three to be in compliance with this rule. In re Catanella & E.F. Hutton & Co., 583 F. Supp. 1388, 1401 (E.D. Pa. 1984)(emphasis in original). We therefore deny the motion to dismiss Count Three.

D. Dismissal of Negligence and Negligent Supervision Claims.

In Counts Four and Five, Plaintiff raises claims against TD

Bank for negligence and negligent supervision.  Although
Plaintiff has agreed to the dismissal of both of these claims
without prejudice, for the reasons which follow, we are
constrained to dismiss the negligence and negligent supervision
causes of action with prejudice on the basis of Pennsylvania's
economic loss doctrine.[8]

Under the economic loss doctrine, "no cause of action exists
for negligence that results solely in economic damages
unaccompanied by physical injury or property damage."  Excavation
Technologies, Inc. v. Columbia Gas Company of Pennsylvania, 604
Pa. 50, 53, 985 A.2d 840, 841 (2009)(quoting Adams v. Copper
Beach Townhomes Communities, L.P., 2003 PA Super. 30, 816 A.2d
301, 305 (Pa. Super. 2003)).  "Economic loss has been defined as
'damage for inadequate value, costs of repair and replacement of
defective product, consequential loss of property, without any
claim of personal injury or damage to other property.'"  American
Stores Properties, Inc. v. Spotts, Stevens & McCoy, Inc., 678 F.
Supp. 2d 328, 333 (E.D. Pa. 2009)(quoting Palco Linings, Inc. v.
Pavex, Inc., 755 F. Supp. 1269, 1276 (M.D. Pa. 1990)).  Privity
of contract is not required for application of the economic loss

---

        [8]  Defendant additionally seeks dismissal of these claims for the
reason that they are subsumed by the PCC and barred by the gist of the action
doctrine.  Because Defendant has failed to set forth the particular provision
or provisions of the PCC that it believes supplant Plaintiff's common law
claims and because we dismiss with prejudice on the basis of the economic loss
doctrine, we see no need to address these additional arguments in favor of
dismissal.  See, e.g., Bucci, 591 F. Supp. 2d at 780

doctrine to a plaintiff's negligence claim, although there is an exception to the general rule for claims of negligent misrepresentation under the Restatement (Second) of Torts §552 (1977)(governing information negligently supplied for the guidance of others).  Id.; Bilt-Rite v. The Architectural Studio, 581 Pa. 454, 866 A.2d 270, 285 (2005).  Thus, because the only damages which Plaintiff alleges it sustained as a consequence of Defendant's alleged negligence and negligent supervision[9] in this case are solely economic in nature, we find that these claims are barred by operation of the economic loss doctrine.  For these reasons, we dismiss Counts Four and Five of the First Amended Complaint with prejudice.

### Conclusion

For all of the reasons set forth above, TD Bank's Motion to Dismiss Plaintiff's First Amended Complaint is granted in part and denied in part pursuant to the attached Order.

---

[9]  Under Pennsylvania law, an employer may be liable for negligent supervision of an employee where the employer fails to exercise ordinary care to prevent an intentional harm to a third-party which (1) is committed on the employer's premises by an employee acting outside the scope of his employment and (2) is reasonably foreseeable.  Mullen v. Topper's Salon and Health Spa, Inc., 99 F. Supp. 2d 553, 556 (E.D. Pa. 2000)(citing Gorwara v. AEL Industries, Inc., Civ. A. No. 89-6401, 1990 U.S. Dist. LEXIS 4311 at *5 (E.D. Pa. April 12, 1990), Dempsey v. Walso Bureau, 431 Pa. 562, 246 A.2d 418, 419-22 (1968) and Restatement (Second) of Torts §317 (1965)).